SCHMIEDER, Appellant, v. STANDARD OIL COMPANY OF INDIANA, Respondent.

*No. 429. Argued June 3, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 732.)

420

For the appellant there was a brief by *Hill, Quale & Hartman* of Baraboo, and oral argument by *James Hill.*

For the respondent there was a brief by *Cross, Karch, Langer & Wagner* of Baraboo, and oral argument by *John Langer.*

HANLEY, J. The sole issue presented upon this appeal is whether Standard Oil accepted Schmieder's equipment and "invoice price" as a matter of law.

Schmieder contends that by Standard Oil's failure to reject the equipment involved until September, 1968, it is required to pay the "invoice price" because it accepted the equipment with knowledge of such price and did not reject the equipment within a reasonable time. Standard Oil does not contend it is not obligated to pay for the equipment, but argues that it was not required to pay the price demanded by the plaintiff.

Both parties agree that Article 2 of the Uniform Commerical Code—Sales, ch. 402, Stats., applies to the transaction in question. They also agree that the clause of the employment contract giving Standard Oil an option

to purchase Schmieder's equipment at cost less such depreciation as may be mutually agreed upon left the element of price to further agreement between the parties.

Sec. 402.305, Stats., allows parties to conclude a contract for the sale of goods without settling the matter of price. That section provides in part:

"(1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if:
"(a) Nothing is said as to price; or
"(b) The price is left to be agreed by the parties and they fail to agree; or
"(c) . . ."

Therefore, Standard Oil, by exercising its option to purchase the equipment, did create a valid contract to purchase that equipment although the price was yet to be determined.

Plaintiff cites numerous authorities for the proposition that a buyer, who fails to reject goods within a reasonable time, must pay for them. *Kelsey v. J. W. Ringrose Net Co.* (1913), 152 Wis. 499, 140 N. W. 66 (reasonable time to test machine to determine if it complies with warranty); *Hiltgen v. Biever* (1916), 162 Wis. 315, 156 N. W. 132 (reasonable time to try goods to determine if they were in compliance with the terms of the sale); *Robinson v. Jonathan Logan Financial* (D. C. App. 1971), 277 Atl. 2d 115 (reasonable time to reject goods delivered late); and *Axion Corp. v. G.D.C. Leasing Corp.* (1971), 359 Mass. 474, 269 N. E. 2d 664 (reasonable time to reject nonconforming goods).

Plaintiff also relies on *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 573, 18 N. W. 2d 468, where this court said:

"By the issuance and confirmation of the blanket order and the acceptance of the purchase orders by the defendant, these provisions in the price schedules in legal effect became terms of the contract between the parties."

From these cases, Schmieder argues that Standard Oil accepted the equipment, became obligated to pay for it and accepted the price, $5,103.50, set forth in the list he submitted to it.

These cases are inapplicable to the case at bar, however. Here, the contract between the parties established that the price to be paid for the equipment was to be Schmieder's cost minus such depreciation as may be mutually agreed upon by them. The statute permits such a standard. Therefore, Standard Oil could, and did, accept the equipment so as to become obligated to pay for it without agreeing at that time what amount it would have to pay. The fact that the parties could not reach agreement as to the price did not, however, obligate Standard Oil to pay the amount claimed by Schmieder.

Here the parties never agreed upon the depreciation. The contract provided no method for determining depreciation in the event mutual agreement could not be reached. Since plaintiff did not provide defendant with his claimed depreciation until many months after the termination of the contract, the trial court, of necessity, had to determine a reasonable depreciation and did so. *See:* Sec. 402.305 (4), Stats. Under the facts, a $33\frac{1}{3}$ percent rate of depreciation was reasonable.

We conclude that the purchase price to be paid by Standard Oil to plaintiff is controlled by the terms of the contract; that the cost as determined by the trial court is reasonable; that plaintiff failed to prove his cost for the equipment at the three filling stations; that the plaintiff did not meet the burden of proof in establishing any depreciation as claimed; that the depreciation allowed by the trial court was reasonable and that, therefore, the judgment appealed from must be confirmed.

*By the Court.*—Judgment affirmed.